Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL V

| | | |
|---|---|---|
| APEX BANK **Recurrida** V. RAFAEL JUAN CASASNOVAS CORTÉS **Peticionario** | KLCE202400863 | *CERTIORARI* procedente del Tribunal de Primera Instancia Sala Superior de San Juan Núm: K CD2016-0616 Sobre: Ejecución de Hipoteca |

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Bonilla Ortiz y la Jueza Mateu Meléndez.

**Hernández Sánchez, Juez Ponente.**

### RESOLUCIÓN

En San Juan, Puerto Rico, a 6 de septiembre de 2024.

El 8 de agosto de 2024, el Sr. Rafael J. Casasnovas Cortés (señor Casasnovas Cortés o peticionario) compareció ante nos mediante un *Escrito de Certiorari* y solicitó la revisión de una *Orden* que se dictó el 22 de febrero de 2024 y, se notificó al día siguiente, por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI). Mediante el aludido dictamen, el TPI declaró No Ha Lugar al requerimiento para la producción de documentos presentado por el peticionario.

Por los fundamentos que expondremos a continuación, ***denegamos*** el recurso de epígrafe.

I.

El 23 de marzo de 2016, Oriental Bank de Puerto Rico, ahora APEX Bank[1] (APEX o recurrida), presentó una *Demanda* sobre cobro de dinero y ejecución de hipoteca en contra del señor Casasnovas Cortés.[2] En respuesta, el 19 de mayo de 2016, el peticionario presentó su *Contestación a Demanda*.[3]

---

[1] Véase, págs. 14-18 del apéndice del recurso. El 10 de febrero de 2020, el TPI emitió una *Orden*, que se notificó el 19 de febrero de 2020, en la cual declaró Ha Lugar a la *Moción de Sustitución de Partes y Cesión de Intereses* que presentó Oriental. En consecuencia, ordenó a que se tramitara el caso de epígrafe a nombre de APEX, en sustitución de Oriental.
[2] Íd., pág. 1-7.
[3] Íd., pág. 8-13.

Tras varios trámites procesales los cuales no son necesarios pormenorizar, el 31 de octubre de 2022, el Centro de Mediación de Conflictos presentó una *Moción Informativa Devolviendo el Caso de Ejecución de Hipoteca Atendido Mediante por Videoconferencia.*[4] Alegó que, las partes se reunieron en mediación los días 16 de agosto de 2022, 28 de septiembre de 2022, 7 y 28 de octubre de 2022. Además, informó que las partes habían completado el proceso de mediación, más la intervención culminó sin acuerdo. En vista de lo anterior, el 10 de noviembre de 2022, el TPI emitió y notificó una *Orden*, en la cual ordenó la continuación de los procedimientos.[5]

Así las cosas, el 11 de octubre de 2023, el TPI emitió y notificó una *Orden.*[6] En esta, concedió hasta el 30 de noviembre de 2023 para culminar el descubrimiento de prueba. Posteriormente, el 27 de octubre de 2023, el señor Casasnovas Cortés presentó un *Requerimiento para producción de documentos.*[7] En específico, solicitó a APEX la producción de los siguientes documentos:

1. Todos los documentos, incluyendo correos electrónicos, de la venta de la acreencia hipotecaria de Oriental Bank a Apex Bank con relación al préstamo del señor Rafael J. Casasnovas Cortés, el cual está garantizado con la propiedad de este y la cual Apex Bank pretende ejecutar.

2. Todos los documentos, incluyendo correos electrónicos, relacionados con el proceso de *Loss Mitigation* llevado a cabo por Apex Bank como parte del procedimiento de mediación realizado en el caso de epígrafe.

Cónsono con lo anterior, el 30 de noviembre de 2023, el peticionario presentó su *Moción para que se Ordene al Demandante a Producir los Documentos Solicitados por el Demandado.*[8] En síntesis, arguyó que el 8 de noviembre de 2023, APEX le remitió una carta en la cual objetó la producción de documentos sobre la venta

---

[4] Íd., pág.18-19.
[5] Íd., pág. 20-21.
[6] Íd., pág. 46-47.
[7] Íd., pág. 57-59.
[8] Íd., pág. 63-92.

de la acreencia hipotecaria de Oriental a APEX, toda vez que era información privilegiada por secreto de negocio. No obstante, indicó que APEX se ofreció a enviar copia del pagaré original con el endoso y le invitó a inspeccionar el mismo. A su vez, señaló que APEX objetó la producción de documentos relacionada con el proceso de mitigación de daños que se llevó a cabo en el proceso de mediación. Esto, así pues, dicha información era privilegiada y confidencial conforme a la Regla 6.01 del Reglamento de Métodos Alternos para la Solución de Conflictos, (Reglamento), 4 LPRA XXIX y la Regla 516 de las Reglas de Evidencia, 32 LPRA Ap. IV.

El peticionario, esbozó, que el 15 de noviembre de 2023, le remitió una carta a APEX en la cual discrepó de los planteamientos de este. Particularmente, enfatizó que APEX no expuso los argumentos para que dichos documentos fueran considerados como secreto comercial conforme a la Regla 23 de Procedimiento Civil, 32 LPRA Ap. V. Además, razonó que no era impedimento descubrir los documentos de *loss mitigation,* por el hecho de que dichos documentos formaron parte del proceso de mediación. Por último, expuso que el 20 de noviembre de 2023, las partes acordaron someter la controversia con relación del descubrimiento de prueba ante el Tribunal.

Posteriormente, el 19 de diciembre de 2023, APEX presentó su *Réplica en Oposición a Moción para que se Ordene al Demandante a Producir los Documentos Solicitados por el Demandado y en Solicitud de Orden Protectora.*[9] En síntesis, expresó que las negociaciones entre APEX y Oriental estaban sujetas a mediades de seguridad por regulaciones federales y estatales, por lo que los pormenores de la venta de la acreencia eran un secreto de negocio. Sostuvo que el pagaré original debidamente endosado era la mejor

---

[9] Íd., pág. 98-114.

evidencia y, que la insistencia del peticionario sobre dicha documentación era un intento de dilatar los procedimientos. De igual forma, reiteró que la Regla 6.01 del Reglamento, *supra*, era de aplicación al pleito de epígrafe y, que la información ofrecida durante el proceso de mediación era privilegiada y confidencial. Asimismo, aclaró que nunca consintió a divulgar dicha información.

Luego de examinar los argumentos presentados por las partes, el 22 de febrero de 2024, el TPI emitió una *Orden* que se notificó al día siguiente, en la cual declaró No Ha Lugar a la producción de documentos.[10] En lo pertinente, el TPI determinó lo siguiente:

> Sobre la producción de documentos y otros de la venta de acreencia se declara No Ha Lugar.
>
> La parte demandada alega que la misma es pertinente, ya que APEX reclama tener legitimación para ejercer la acreencia. No obstante, estando disponible para inspección del demandado el pagaré original, cualquier otra documentación sobre la venta no es pertinente o al menos el demandado no ha puesto al tribunal en posición para determinar que lo es.
>
> Sobre la documentación del proceso de Loss Mitigation llevado a cabo como parte del proceso de mediación se declara No Ha Lugar. El Tribunal entiende que los mismos son de carácter confidencial al amparo de los incisos (a), (b) y (c) de la Regla 6.01 del Reglamento de Métodos Alternos para la Solución de Conflictos 4 LPRA Ap. XXIX.
>
> Se extiende el descubrimiento de prueba hasta el 31 de mayo de 2024.

Inconforme, el 11 de marzo de 2024, el peticionario presentó su *Moción de Reconsideración* en la cual reiteró sus planteamientos iniciales.[11] Arguyó que APEX adquirió el pagaré luego de su vencimiento, por lo que no era un tenedor de buena fe. Asimismo, señaló que tenía descubrir evidencia conducente a probar que APEX actuó de mala fe, toda vez que no ofreció todas las alternativas disponibles para que pudiese retener su propiedad. En virtud de lo

---

[10] Íd., pág. 125-130.
[11] Íd., pág. 131-139.

anterior, razonó que el incumplimiento de APEX removía cualquier protección de confidencialidad en el proceso de mediación.

En respuesta, el 14 de marzo de 2024, APEX presentó su *Réplica en Oposición a Moción de Reconsideración*.[12] Esbozó que, en la *Oposición a Moción Solicitando Sentencia Sumaria* que presentó el peticionario el 4 de abril de 2024, admitió que no existía controversia con relación a la validez de la firma del pagaré hipotecario. A su vez, indicó que el pagaré contaba con un endoso especial a favor de APEX, emitido por un representante de Oriental. Sostuvo que los pormenores de la venta eran irrelevantes, dado que el pagaré hipotecario estaba disponible para su inspección. De otra parte, esgrimió que el reporte de mediación era claro y, que no se reportó ningún acto de mala fe por parte de APEX.

Así las cosas, el 3 de julio de 2024, el TPI emitió una *Orden* que se notificó el 9 de julio de 2024, en la cual declaró No Ha Lugar a la *Moción de Reconsideración*.[13] Aún inconforme, el 8 de agosto de 2024, el peticionario presentó el recurso de epígrafe y formuló los siguientes señalamientos de error:

> **Erró el foro a quo al denegar el descubrimiento de todos los documentos de la venta de la acreencia hipotecaria de Oriental Bank a Apex Bank con relación al préstamo del señor Casasnovas Cortés, el cual está garantizado con la propiedad de este y la cual Apex Bank pretende ejecutar y concluir que estando disponible para inspección del demandado el pagaré original, cualquier otra documentación sobre la venta no es pertinente o al menos el demandado no ha puesto al tribunal en posición para determinar que lo es.**

> **Erró el foro a quo al denegar el descubrimiento de todos los documentos relacionados con el proceso de loss mitigation llevado a cabo por Apex Bank como parte del procedimiento de mediación, al concluir que los mismos son de carácter confidencial al amparo de los incisos (a), (b) y (c) de la regla 6.01 del Reglamento de Métodos Alternos para la Solución de Conflictos. 4 LPRA Ap. XXIX.**

---

[12] Íd., pág. 142-155.
[13] Íd., pág. 161-164.

Atendido el recurso 19 de agosto de 2024, emitimos una *Resolución* concediéndole a la parte recurrida hasta el 23 de agosto de 2024, para presentar su oposición al recurso. Oportunamente, el 23 de agosto de 2024, APEX presentó su *Oposición a Expedición de Auto de Certiorari* y negó que el TPI cometiera los errores que el peticionario le imputó. Con el beneficio de la comparecencia de ambas partes, procedemos a resolver el asunto ante nuestra consideración. *Veamos.*

II.

**-A-**

El *certiorari* es el vehículo procesal extraordinario utilizado para que un tribunal de mayor jerarquía pueda corregir un error de derecho cometido por un tribunal inferior. *Torres González v. Zaragoza Meléndez*, 2023 TSPR 46, 211 DPR 821 (2023). Los tribunales apelativos tenemos la facultad para expedir un *certiorari* de manera discrecional. Íd. Esta discreción se define como "el poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción". *García v. Padró*, 165 DPR 324, 334 (2005). Asimismo, discreción es una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justa. Íd., pág. 335. Ahora bien, la aludida discreción que tiene este foro apelativo para atender un *certiorari* no es absoluta. Íd. Esto ya que no tenemos autoridad para actuar de una forma u otra, con abstracción total al resto del derecho, pues ello constituiría abuso de discreción. Íd. Así, "el adecuado ejercicio de la discreción judicial esta inexorable e indefectiblemente atado al concepto de la razonabilidad". Íd.

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, establece que el recurso de *certiorari* para resolver resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, será expedido por el Tribunal de Apelaciones cuando se recurre de: (1) una resolución u orden bajo la Regla 56 (Remedios

Provisionales) y la Regla 57 (*Injunction*) de las Reglas de Procedimiento Civil; (2) la denegatoria de una moción de carácter dispositivo y; (3) por excepción de: (a) decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales; (b) asuntos relativos a privilegios probatorios; (c) anotaciones de rebeldía; (d) casos de relaciones de familia; (e) casos que revistan interés público; y (f) cualquier otra situación en la que esperar a la apelación constituiría un fracaso irremediable de la justicia.

Por su parte, la Regla 40 del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B enmarca los criterios que debe evaluar este tribunal al expedir un auto de *certiorari.* La aludida regla establece lo siguiente:

> El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B, R. 40.

Ninguno de estos criterios es determinante por sí solo para el ejercicio de jurisdicción y tampoco constituyen una lista exhaustiva. *García v. Padró*, supra, pág. 335. La norma vigente es que los tribunales apelativos podremos intervenir con las determinaciones

discrecionales del Tribunal de Primera Instancia cuando este haya incurrido en arbitrariedad, craso abuso de discreción o en un error en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo. *Pueblo v. Rivera Santiago*, 176 DPR 559, 581 (2009).

## III.

Nos corresponde justipreciar si debemos ejercer nuestra facultad discrecional al amparo de los criterios enmarcados en la Regla 40 del Tribunal de Apelaciones, *supra.* Luego de examinar el expediente a la luz de los criterios de la Regla 40 del Tribunal de Apelaciones, *supra,* no identificamos razón por la cual este Foro deba intervenir. Ello, ya que no se presentan ninguna de las situaciones que allí se contemplan. Recordemos que nuestro ordenamiento jurídico nos brinda la discreción de intervenir en aquellos dictámenes interlocutorios o postsentencia en los que el foro de primera instancia haya sido arbitrario, cometido un craso abuso de discreción o cuando, de la actuación del foro, surja un error en la interpretación o la aplicación de cualquier norma procesal o de derecho sustantivo. Reiteramos que en el recurso que aquí atendemos no se nos ha demostrado que haya alguno de estos escenarios.

## IV.

Por los fundamentos antes expuestos, ***denegamos*** el recurso de epígrafe.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones